FARMERS' LOAN & TRUST CO. et al. v. CENTRALIA & C. R. CO. et al.

(Circuit Court of Appeals, Seventh Circuit. October 3, 1899.)

No. 608.

1. RAILROADS—JURISDICTION TO APPOINT RECEIVER.

The jurisdiction of a court to appoint a receiver for a railroad, and the validity of proceedings taken thereunder, do not depend on the technical sufficiency of the bill under which the appointment is made; and, if the bill was sufficient to invoke the exercise of jurisdiction, the fact that it was subject to demurrer, or that the court acted erroneously in the premises, will not invalidate receiver's certificates issued under orders of the court.

2. SAME—VALIDITY OF RECEIVER'S CERTIFICATES—CONSENT OF BONDHOLDERS.

A committee appointed by the bondholders of a railroad company, with power to act for them and in their stead in matters requisite or necessary for the enforcement and protection of their legal rights in the premises, has no authority to consent in their behalf to the issuance of receiver's certificates, to constitute a lien prior to the mortgage on the property of the company, and the proceeds of which are to be used in the payment of claims which are not entitled to preference over the bonds.

3. SAME—RIGHT OF BONDHOLDERS TO ATTACK CERTIFICATES—NOTICE TO TRUSTEE.

The fact that the trustee in a mortgage securing railroad bonds was notified of an application by a receiver, appointed in a suit in which the trustee had not been served with process or appeared, for authority to issue receiver's certificates, does not render an order authorizing the issuance of such certificates, and making them a lien prior to that of the mortgage, binding on such trustee or the bondholders it represents, and they have the same right to attack the validity of such certificates, and to assert their priority of lien, when subsequently brought before the court, as if such questions were then for the first time presented for determination.

Appeal from the Circuit Court of the United States for the Southern District of Illinois.

The appellant, the Farmers' Loan & Trust Company of New York, is the trustee in a deed of trust or mortgage executed on July 1, 1889, by the Centralia & Chester Railroad Company, to secure the payment of bonds of the same date to the amount of $1,680,000. The question presented by the appeal is whether receiver's certificates issued in pursuance of orders of the circuit court were properly made a lien upon the corpus of the railroad prior in equity to the lien of the mortgage, which was prior in date. After entry of the decree, the Ætna Insurance Company, on its own petition, showing that it held and owned twenty-five of the mortgage bonds, was admitted a party for the purpose of praying an appeal, and accordingly joined the trust company in taking the appeal and in assigning errors. The certificates in dispute were issued upon the authority of four orders entered on August 3 and December 16, 1897, and March 10 and July 23, 1898; the amounts authorized being in the order stated, respectively, $200,000, $175,000, $50,000, and $125,000. The validity of all of the certificates is denied, on the ground that the bill upon which the receiver was appointed was so defective as to afford the court no basis for the exercise of jurisdiction, and of a part thereof on the ground that there was no reason for their issue, and the proceeds were applied to the payment of demands which were not entitled in equity to a preference over the mortgage indebtedness.

The receiver was appointed on motion of the Missouri Car & Foundry Company, a corporation of Missouri, which on June 7, 1897, brought in the court below a bill against the Centralia & Chester Railroad Company, which was a corporation of Illinois. The Farmers' Loan & Trust Company was also named a defendant, the fact was stated of its holding a trust deed to secure bonds to the amount of $1,680,000, and process was prayed against it; but until November 4, 1898, no process was issued, and the subpœna then issued was directed

"to the Centralia & Chester Railroad Company, impleaded with the Farmers' Loan & Trust Company and others," and on the third day thereafter was returned, "Not served by order of the complainant's solicitors." Besides the formal averments of the organization and citizenship of the parties, the bill charged, in substance, that the railroad company was indebted to the complainant in the sum of $4,736.21 for equipment of the road; that the railroad company was insolvent, and unable to pay debts and obligations due to its employés and furnishers of supplies to the amount of $90,000; that suits involving more than $30,000 were pending against the company; that judgments to the amount of $10,000 had already been taken against the company, executions issued and levied on motive power, and that danger was imminent of a segregation of rolling stock from the railroad; that $28,000 of current earnings had been diverted and misapplied in the payment for construction and permanent betterments of the road; that the road was being operated as a continuous line, carrying passengers, freight, and mails, and that the interest of the public and of all concerned required that it be kept in operation as a railroad; and to that end it was prayed that the court take the road into its custody and appoint a receiver. Upon the filing of the bill, an appearance by attorney was entered for the railroad company, and thereupon an order was entered appointing C. M. Forman receiver. On the ensuing 11th, the receiver was granted leave to borrow $3,500. On the 16th, an order was made, which, after reciting the coming of the receiver by his attorneys, "and Jerome D. Gillett, president and representative of the bond and stockholders of said railroad," authorized the issue of receiver's certificates to the amount of $200,000; but, the order containing no provision that the certificates should constitute a lien on the road, an amendatory order, containing a like recital of the coming of Gillett, "president and representative of the bondholders and stockholders of the said railroad company," was entered on August 3d, authorizing the issue and prescribing the form of certificates to the amount specified in the previous order, and decreeing that when issued they should be "the first and paramount lien on the entire line," and upon other property and the earnings above operating expenses of the railroad.

On November 11, 1897, the receiver presented a petition showing what had been done in the way of completing unfinished parts of the road, praying for leave to procure further equipment, and asking that notice of the application be given to the Farmers' Loan & Trust Company of New York City, trustee, and to "J. D. Gillett, of No. 66 Broadway, N. Y., president of this company"; and on December 16, 1897, he filed a supplemental petition, purporting to show to the court that after filing the original petition "he caused notice of this application to be served upon the Farmers' Loan & Trust Company of New York City, trustee for the bondholders, and upon J. D. Gillett, of No. 66 Broadway, New York, president of said C. & C. Company, and that action herein has been deferred until a full and free conference could be had with the parties in interest." It is further stated that since the filing of the original petition it had been ascertained that the railroad company was indebted to parties in New York, Connecticut, Rhode Island, and New Jersey in the sum of $80,000, evidenced by promissory notes of the company, and in respect thereto it is said: "Your petitioner and the parties in interest have concluded that this indebtedness, with other indebtedness of said company, should be paid in preference to the mortgage indebtedness, the bondholders having consented thereto." The petition then explains the necessity therefor, and asks leave to issue certificates to the amount of $175,000 in addition to those before authorized. On the same day the following answer was filed:

"To the Honorable Judge of said Court, in Chancery Sitting: The undersigned, Wayne Griswold, of the city of New York, for answer to the petition of C. M. Forman, receiver of the Centralia & Chester Railroad Company, filed herein on this day, showeth unto your honor that at a meeting of the bondholders' committee, representing the bondholders of the Centralia & Chester Railroad Company, and owning and representing ninety-two per cent. of said bonds held in New York City on the 8th day of November, 1897, your respondent was appointed as their representative, with full power and authority to represent the bondholders herein. Respondent, further answering, says that said bondholders, through him, admit the facts alleged in the supplemental peti-

tion of the said receiver filed herein, and consent to the issue of the one hundred and seventy-five thousand dollars ($175,000) worth of receiver's certificates as prayed for, for the purposes therein stated. Respondent says that, as the representative aforesaid, he has carefully examined the property of said company and its condition, and that the action prayed for is for the good of all concerned; and further your respondent sayeth not.

"[Signed]                    Wayne Griswold, Representative of Bondholders."

The court thereupon entered the order prayed, it being recited as "appearing to the court that the Farmers' Loan & Trust Company of New York City, trustee for the bondholders of said railroad company, and J. D. Gillett, of No. 66 Broadway, New York City, president of said railroad company, had been duly notified in writing of this application," etc., and the certificates so ordered were declared a lien subordinate only to those first ordered.

To the petition of February 23, 1898, whereby, after reporting the disposition of the proceeds of the certificates before authorized, the receiver asked authority to issue certificates to the amount of $50,000, Griswold again answered, as attorney in fact for the committee appointed by the bondholders holding ninety-five per cent. of the bonds, to the effect that, as representative of the bondholders, he had "investigated the present actual condition of the property" of the railroad company, and that in his judgment it would be necessary, in the interest of the property, to expend $50,000 more in the completion of the road into Chester and in other work specified.

On March 1, 1898, the clerk of the court mailed to the Farmers' Loan & Trust Company at New York a letter over his official signature, in which he said:

"Gentlemen: I herewith inclose you copy of a notice of application for the issue of receiver's certificates to be issued by receiver of the Centralia & Chester Railroad Company. Will you have the kindness to acknowledge receipt of the notice on the duplicate copy herewith inclosed, and mail it to me at Springfield, Illinois. By so doing, you will greatly oblige,

"Yours, truly."

To that letter the following response was sent, and the letter and response were both marked "Filed," and were filed in the clerk's office on March 10, 1898:

"22 Williams Street, New York, March 7, 1898.

"James T. Jones, Esq., Clerk United States Circuit Court, Springfield, Ills.— Dear Sir: The Farmers' Loan & Trust Company has received your letter of March 1st and inclosures. Although the Farmers' Loan & Trust Company appears to be named as party defendant in the suit pending in your court, brought by the Missouri Car & Foundry Company against the Centralia & Chester Railroad Company, nevertheless the Farmers' Loan & Trust Company has never been brought in as a party, and has never entered any appearance in the suit. Please understand that nothing contained in this letter is to be construed as such appearance. We understand that the receiver has already obtained authority to issue certificates, and proposes to ask for further authority in that line, the trustee not appearing or being represented in the case. Such being the situation, we suggest that the trust company is not at all concluded in the matter, and may at any time attack the validity of the certificates and question the propriety of their payment.

"Very truly,                    Turner, McClure & Rolston."

Thereupon the order prayed was made, authorizing further certificates to the amount of $50,000, to be a lien subordinate only to those theretofore ordered; it being recited as "appearing to the court that Wayne Griswold, attorney in fact for the committee appointed by the bondholders holding ninety-five per cent. of the bonds issued, * * * had filed an answer to the petition herein, admitting the facts as therein alleged to be true, * * * and it further appearing that due notice had been given to the Farmers' Loan & Trust Company of New York, trustee, of the filing of said petition and the application for this order."

The order of July 23, based upon the receiver's petition of July 13, 1898, contains a recital of "it appearing to the court that Wayne Griswold, attorney

in fact for the committee appointed by the bondholders holding ninety-five per cent. of the bonds, * * * filed an answer to the petition herein, admitting the facts as therein alleged to be true, and also the necessity of securing an order for the issue of additional receiver's certificates, * * * and it further appearing to the court that due notice has been given to the Farmers' Loan & Trust Company, trustee, of the filing of said petition and for the application for this order." The answer of Griswold is not in the transcript, and it does not appear that the court, or the notice to the Farmers' Loan & Trust Company, named a time for the hearing of the petition.

The bondholders' agreement of October, 1897, contains, with others, the following recitals and provisions:

"Whereas, on the 7th day of June, 1897, a receiver was appointed for the Centralia & Chester Railroad Company, who is now in possession and control of said railroad, and engaged in finishing the same; and whereas, the undersigned, holders of the bonds of said road, are desirous of exercising, enforcing, and protecting their legal rights in the premises, to the end that the money due therefrom may be recovered: Now, therefore, we, the undersigned, who are holders to the amount of the said bonds set opposite our names respectively hereunto subscribed, in consideration of the advantages which will result to us. respectively, from concert of action in enforcing and protecting our rights, and in preserving and protecting the property of said railroad company, and of other good considerations, do hereby, each for himself, and not one for the other, or either of the others, agree with each other, and with the committee hereinafter mentioned, as follows, that is to say:

"First. That we will act together in concert in the endeavor to bring about such results as shall afford protection to the securities now held by us, and to see that said receiver properly performs his duty in the premises, and that no unnecessary waste or disbursements of the funds of the company shall be made in conducting the business, it being understood that whatever may be done under this agreement shall, subject to the stipulations herein contained, be for our equal benefit, according to the amount of said bonds held by us, respectively; and, in order to facilitate our proceedings under this agreement, W. S. Ingraham, Robert Rodman, William Fuller Tufts, and William T. Bolles, who are now the owners of a majority of the bonds of said Centralia & Chester Railroad Company, be, and they are hereby, appointed a committee in our behalf, and they and their substitutes, selected as hereinafter provided, are hereby authorized and empowered, as our attorneys and in our name, to take such proceedings, give such directions, execute such papers, and do such acts as they may consider judicious and proper, in order to protect the rights of the bondholders who are subscribers to this agreement.

*    *    *    *    *    *    *    *    *    *    *    *    *

"Third. That if, during the continuance of this agreement, and the existence of such committee, any question not herein provided for shall arise in reference to any matter growing out of the duties hereby devolved upon the said committee, it also shall be determined by a vote of the majority in interest, present or represented, at a general meeting of the parties in interest under this agreement; and such determination shall be binding as well upon the said committee as upon all subscribers hereto, and their representatives and assigns.

"Fourth. That we hereby give and grant unto our said committee full power and authority to do and perform all and every act or thing requisite and necessary to be done in and about the premises, as fully, to all intents and purposes, as we might or could do if personally present; hereby ratifying and confirming all that our said committee shall lawfully do, or cause to be done, by virtue hereof, including the power and authority to attend all bondholders' and stockholders' meetings, and if not ourselves present, either in person or by written proxy, to vote in our names, and upon our bonds and stock, on all questions that may come up at such meeting, and also to institute, maintain, and carry on any and all actions and legal proceedings, in our name or otherwise, for the purpose of carrying out the object of this agreement.

"[Signed by forty-eight bondholders, with an aggregate holding of 966 bonds.]"

The committee so appointed, on November 8, 1897, appointed Wayne Griswold their agent, and executed to him the following power of attorney: "Know all men by these presents, that we, W. S. Ingraham, William F. Tufts, and W. T. Bolles, and Robert Rodman, committee, representing all of the bondholders of the Centralia & Chester Railroad Company, have made, constituted, and appointed, and by these presents do make, constitute, and appoint, Wayne Griswold our agent, to represent us under said agreement, and do hereby make him our true and lawful attorney, for and in our name, place, and stead, to procure from the receiver of such road all the accounts of such receiver and of the Centralia & Chester Railroad Company, showing the indebtedness of such railroad company, the indebtedness of the receiver, also what debts of the railroad company and what debts of the receiver remain unpaid and what such indebtedness is for, also how near such railroad is to completion and how much money has been expended in its construction by the receiver and the purposes for which it has been expended, and to procure full information regarding the same. We also hereby authorize him, if it becomes necessary, to retain counsel, and make such application to the court as counsel shall advise, should the receiver refuse to give the information voluntarily, and to do all other acts necessary to protect the bondholders' interests; giving and granting unto our said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully, to all intents and purposes, as we might or could do if personally present, with full power of substitution and revocation; hereby ratifying and confirming all that our said attorney or his substitute shall lawfully do, or cause to be done, by virtue hereof. In witness whereof," etc. This was duly signed, sealed, and acknowledged by the subscribers before a notary public.

The annual report of the receiver was filed on September 27, 1898, showing receipts and disbursements, including proceeds of receiver's certificates. The debt due the Missouri Car & Foundry Company had theretofore been paid in full. Following this report, on the same day, the receiver filed a petition for the sale of the road, representing that, "in view of the facts hereinbefore stated, there is no good or apparent reason why the receivership should be further continued, but, on the contrary, the receiver fears that he will be embarrassed by the necessity of creating indebtedness for the payment of which he can make no provision." It was further stated that the first, second, and third issues of certificates, amounting to $425,000, were sold to the Equitable Trust Company of Chicago, and "that $1,000 of the last issue was taken by the same company." Of the last issue it was alleged that $23,000 were held, and $7,000 contracted for, by the St. Charles Car Company, and $9,400 contracted for by the Pittsburg Locomotive Company.

On October 8, 1898, the Farmers' Loan & Trust Company brought its bill in the same court to foreclose its mortgage, making the railroad company and the Missouri Car & Foundry Company defendants, and on the same day subpœna was issued, and return made showing service on the railroad company and the other defendant not found. On the ensuing October 21st, the court entered a rule against the Farmers' Loan & Trust Company "to appear, plead, answer, or demur" to the bill in the first case by the 7th day of November next, and that the rule be served by the United States marshal for the Southern district of New York by copy. At the same time a like rule and order for the service thereof was entered requiring the trust company to plead, answer, or demur to the receiver's petition for an order of sale. On November 1, 1898, the receiver presented to the court a petition for an injunction forbidding interference with the receiver's possession by the Farmers' Loan & Trust Company, a further prosecution of the suit brought by that company, and the taking of any action whatever under the deed of trust, without leave of the court first obtained. The Equitable Trust Company, on November 14, 1898, filed its answer to the receiver's petition for an order of sale, asserting its purchase and ownership in good faith of the certificates in question, and on the next day the Farmers' Loan & Trust Company appeared, and filed an answer to the bill of complaint, also an answer to the receiver's petition for an order of sale, and a separate answer to the petition for an injunction. The Equitable Trust Company also filed an answer to the bill of the Farmers'

Loan & Trust Company, and, both cases having been put at issue by replication, they were, on November 28, 1898, by consent of solicitors, ordered consolidated. The evidence was taken without a reference to a master, and on June 2, 1899, the court entered its finding and decree adjudging the receiver's certificates valid, and the lien thereof prior in equity to the lien of the mortgage, and ordering payment accordingly out of the proceeds of the sale of the property, which is worth but little, if any, more than the amount of the certificates.

Wm. Burry, for appellants.

A. F. Hatch, for appellees.

Before WOODS and JENKINS, Circuit Judges, and SEAMAN, District Judge.

WOODS, Circuit Judge, after stating the case, delivered the opinion of the court.

The bill of the Missouri Car & Foundry Company, under which the receiver was appointed and the several orders made for the issue of receiver's certificates, was doubtless demurrable, because it did not show that the demand of the plaintiff had been reduced to judgment (Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712; Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 883, 977); and the defect was not cured by an admission of record of the existence and amount of the debt. There was no such admission. But it does not follow, as we conceive, that the court was wholly without jurisdiction of the cause, and all its proceedings void; nor, in our opinion, was jurisdiction lost upon payment of the demand of the plaintiff in the bill. "A court which appoints a receiver," it was said in Kneeland v. Trust Co., 136 U. S. 89, 98, 10 Sup. Ct. 950, 953, "acquires, by virtue of that appointment, certain rights, and assumes certain obligations, and the expenses which the court creates in discharge of those obligations are burdens necessarily on the property taken possession of; and this, irrespective of the question who may be the ultimate owner, or who may have the preferred lien, or who may invoke the receivership." It is true that in the next sentence the court proceeded to say: "So, if, at the instance of a party rightfully entitled thereto, the court should appoint a receiver of property, the same being a railroad property, and therefore under an obligation to the public of continual operation, it, in the administration of such receivership, might rightfully contract debts necessary for the operation of the road, either for labor, supplies, or rentals, and make such expenses a prior lien on the property itself:" but by the use of the expression, "at the instance of a party rightfully entitled thereto," it was not intended, we think, that the validity of a receivership, and everything done under it, should depend absolutely upon the actual or the alleged right of the plaintiff in the bill to invoke the appointment of a receiver. Though no objection was interposed, it was doubtless erroneous on the part of the court to proceed as it did on the bill in this case, but to hold that the validity of the proceedings in such cases will depend upon the exercise of an unerring judgment of the sufficiency of the bill to withstand demurrer would involve unendurable mischiefs. This bill was not insufficient, we think, to invoke the exercise of jurisdiction. In its general character and scope

96 F.—41

it was of equitable cognizance, and the jurisdiction of the court did not depend upon technical sufficiency or fullness of averment. Sage v. Railroad Co., 125 U. S. 375, 8 Sup. Ct. 887; Brown v. Iron Co., 134 U. S. 534, 10 Sup. Ct. 604. A demurrer for lack of jurisdiction would have been irrelevant.

· Aside from the question of jurisdiction, there is no ground for serious objection to the certificates issued, except that to the extent of $176,000 there was no lawful reason for their issue, and the proceeds were applied to the payment of obligations which, without the consent of the bondholders, should not have been paid in preference to the mortgage debt. There is dispute whether the obligations so paid were incurred by the railroad company in the construction of its road, or by others under construction contracts; but whether that dispute be resolved one way or the other is not important. The obligations were of long standing, and, though recently renewed, were entitled on no consideration, without the consent of the bondholders, to priority over the mortgage lien.

It is strenuously contended that the consent of· the bondholders was obtained, both to the issue of the certificates and to the use made of the proceeds, but in the main that is not shown to be true. Gillett, the president of the railroad company, had no authority to represent the bondholders, and his own testimony is that, except as president of the company, he never claimed to have such authority. If the claim was made, it should not have been accepted without tangible proof capable of being set out in the record. In matters of such importance, there should· be more than a recital in a docket entry, which, if it be evidence, is not conclusive of the fact against any but parties. The chief reliance, however, for proof of consent, is the bondholders' agreement, and the power of attorney given by the bondholders' committee to Griswold. But those writings neither declare nor warrant an inference of such consent. Rather the contrary. The bondholders, it is true, clothed their committee with "full power and authority to do and perform all and every act or thing requisite or necessary to be done in and about the premises, as fully, to all intents and purposes," as they might or could do if personally present. But what were the premises? The recitals and other clauses of the contract show plainly enough. The bondholders thereby declared themselves "desirous of exercising, enforcing, and protecting their legal rights in the premises," and the committee, appointed for that purpose, could not, under the general words quoted, consent to the disregard and outright destruction of the rights which they were appointed to protect. They did not attempt to exceed, nor indeed directly to exercise, their powers. If they were authorized to appoint Griswold to represent them in the matter, they could not, and, so far as appears, did not, attempt to give him powers greater than their own. They authorized him to represent them under the agreement, to do certain specified things, "and to do all other acts necessary to protect the bondholders' interests"; which, of course, did not mean that those interests should be given away in favor of general unsecured creditors, in whose favor there was no cognizable equity.

It is urged next that the bondholders are represented by the trustee named in the deed of trust, and are bound by what was done, because notice was sent to the trustee, the Farmers' Loan & Trust Company. That company, however, though named a defendant in the case, was not in fact a party, and the notices sent to it, in our opinion, were not effective to preclude objection to the orders of the court by the trustee, when finally it appeared in the case in obedience to formal notice. For the law of the case in this respect, we cannot do better than refer to the opinion of Mr. Justice Harlan in Hervey v. Railway Co., 28 Fed. 169, and to the opinion of the supreme court in the same case on appeal, in Union Trust Co. v. Illinois M. Ry. Co., 117 U. S. 434, 6 Sup. Ct. 809. We quote from the latter opinion at length:

"In regard to the fact that neither the Paris & Decatur bondholders nor their trustee were parties to the suit when the order of October 9, 1876, was made, the commissioner took the view, which the circuit court confirmed, that, while they ought to be heard before the order was made conclusive against them, yet, as the objections to the merit of the order would not have been availing if made before it was entered, and the money had been actually and faithfully applied, under the order of the court, to the improvement of the mortgaged property, no equitable reason appeared why the bondholders should keep the benefits and escape the burden. * * * Under these circumstances, the Paris & Decatur trustee and its bondholders in court, through it, can be heard to make no other objections to the orders made, except such as arise as to the merits of the expenditures made under them. The view of the commissioner and the circuit court was that the bondholders should have such rights and equities as they could have properly claimed as parties ab initio, and that this view should apply against them as well as for them. In this we concur. The principles properly applicable to this branch of the case were well expressed by Mr. Justice Harlan in his opinion of February 29, 1884, as follows: 'Those who take receiver's certificates must be deemed to have taken them subject to the rights of parties who have prior liens upon the property, and who have not, but should have been, brought before the court. While the court, under some circumstances, and for some purposes, and in advance of the prior lienholders being made parties, may have jurisdiction to charge the property with the amount of receiver's certificates issued by its authority, it cannot, without giving such parties their day in court, deprive them of their priority of lien. When such prior lienholders are brought before the court, they become entitled, upon the plainest principles of justice and equity, to contest the necessity, validity, effect, and amount of all such certificates, as fully as if such questions were then, for the first time, presented for determination. If it appears that they ought not to have been made a charge upon the property, superior to the lien created by the mortgages, then the contract rights of the prior lienholders must be protected. On the other hand, if it appears that the court did what ought to have been done, even had the trustee and the bondholders been before it when the certificates were authorized to be issued, the property should not be relieved from the charge made upon it, in good faith, for its protection and preservation. Of these rules or principles the parties who inaugurated this litigation cannot justly complain.' "

The amount expended in payment of objectionable claims, being $167,315.51, represents certificates sold at a discount of 5 per cent. to the amount of $176,121.59. It appears that W. S. Ingraham and Robert Rodman, who were members of the bondholders' committee, were holders of demands upon which the improper payments were made, and received payment thereof knowing that the money was of the proceeds of receiver's certificates. There seems to be no ques-

tion of the fact, and to the extent of the bonds held by them the certificates should be deemed valid. The decree below should be modified so as to declare invalid the certificates held by the Equitable Trust Company to the amount of $176,000 face value, less the interest therein of Ingraham and Rodman, to be determined according to the number of bonds held by them in proportion to the whole number outstanding; they to that extent not sharing in the surplus fund to be distributed among bondholders. The decree is therefore reversed, and the cause remanded, with direction to enter a decree in conformity with this opinion.