RHODE ISLAND HOSPITAL TRUST CO. *vs.* S. H. GREENE & SONS CORPORATION.

JULY 2, 1929.

PRESENT: Stearns, C. J., Rathbun, Sweeney, and Murdock, JJ.

MURDOCK, J. This is a bill in equity brought to foreclose a mortgage given by the respondent to the complainant as trustee to secure an issue of bonds to the number of three hundred and fifty, originally of the face value of $1,000 each, but later reduced by payments to the face value of $700 each. After decree of foreclosure the mortgaged property was sold and there remains in the hands of complainant something over $110,000 for distribution. Prior to the foreclosure of the mortgage, the property of the respondent had been placed in the hands of receivers on a stockholder's petition. In the receivership proceedings neither the complainant nor any individual bondholder or other creditor

was made a party. Later one creditor, the Chase National Bank, holding ninety-five bonds of the respondent as security for a loan, on its own motion became a party. The petition was filed on February 21, 1924. Temporary receivers were appointed on that day who were authorized to continue the business, which was that of dyeing, bleaching and finishing, and an order was entered *ex parte* giving authority to the temporary receivers to issue receivers certificates not to exceed $20,000 in amount, which certificates were made a prior lien on all of the property of the respondent. On March 4 a hearing was had at which the decree of February 21 was affirmed and additional authority given to borrow money on accounts receivable. On March 25 the temporary receivers were made permanent receivers and directed to conduct the business and again the decree of February 21 was affirmed, giving the receivers authority to borrow $20,000 on receivers certificates and providing that the total amount for such certificates at any one time should not exceed $20,000 and providing further that such certificates should be paid out of other available assets under the control of the receivers before resort should be had to the mortgaged property.

The business was conducted by the receivers from February 21, 1924, to May 11, 1925, when the plant was closed down. The business was operated at a loss and, in addition to approximately $18,000 due on receivers certificates, there are claims of general creditors of the receivers amounting to about $78,000. From the sale of property not covered by the mortgage the receivers now have on hand about $23,000.

The holders of receivers certificates and the general creditors of the receivers intervened in the foreclosure suit claiming priority over the bondholders as to the funds in the hands of the trustee. The cause was heard in the Superior Court on the intervening creditors' petition on the question of the distribution of the funds, both in the hands of the receivers and the trustee. Final decree has not been entered in the receivership suit but, as the causes are so closely

related and the final decree in the foreclosure suit has a direct bearing on the receivership suit, the two causes will be treated for the purposes of this appeal as though they had been consolidated.

The trial justice found that the receivers certificates should be given priority over the lien of the mortgage, that the claims of Edward A. Greene and Francis W. Greene to the funds in the hands of the trustee should be deferred to the claims of the general creditors of the receivers. From the decree of the Superior Court embodying these findings, the Chase National Bank, the Rhode Island Hospital Trust Co. and Edward A. Greene have taken separate appeals.

The holders of the receivers certificates seek to have the lien of the mortgage subordinated to their claims on the ground, among others, that the trustee consented to the entry of the decree authorizing the issuance of the said certificates. The trustee was not a party and, although its counsel was present in court, he made it clear that he was not there as a representative of the bondholders. The court below found that he was present only as an observer of the proceedings. He had been given notice of the hearing on the application for appointment of receivers but this was not sufficient to bind the bondholders, as the trustee was not made a party. *Farmers Loan and Trust Co.* v. *Centralia &c. C. R. Co.*, 96 Fed. 636. It is clear that on this ground the intervening creditors cannot succeed in their claim of priority over the bondholders.

The intervening creditors contend that practically all of the bondholders, including the Chase National Bank, consented to the use of funds in the hands of the trustee to install a hand printing plant and by so doing acquiesced in the continued operation of the business and so participated in the activities of the receivers as to be precluded on the theory of quasi estoppel from asserting the priority of their bonds.

There was in the hands of the trustee about $11,000, the proceeds of a sale of some property covered by the mortgage.

Sometime in December, 1924, the receivers, being desirous of installing a hand printing plant, requested the trustee to allow the use of a portion of this fund for this purpose. The receivers were optimistic as to the profits to be derived from this source and practically all the bondholders agreed that about $4,000 could be used for the installation of the hand printing outfit, on the condition, however, that the machinery thus purchased should come under the lien of the mortgage. The balance of the fund was used, by agreement among the bondholders to pay overdue coupons on the bonds. The practical consequence of this transaction was to transfer about $4,000 in the form of cash to an asset in the form of machinery as an addition to the property covered by the mortgage and to give to the bondholders a payment on account of overdue interest.

The court below found that, by permitting the use of this money for the purpose of equipping the hand printing plant, the Chase National Bank, at least, should not be considered to have approved of or consented to the general operation of the plant by the receivers and also that the matter of the hand printing establishment was an exceedingly small portion of the business as conducted by the receivers and we approve of this finding. The court below based its finding of priority on the ground that the issuance of receivers certificates was necessary to preserve the estate. In the case of a private corporation whose operations are not affected with a public interest, a court of equity has no power without the consent of the lienors to authorize the issuance of receivers certificates in displacement of prior liens except for the purpose of preserving property placed in its custody. *Smith* v. *Shenandoah National Bank*, 246 Fed. 379; *Farmers Loan and Trust Co.* v. *Grape Creek Coal Co.*, 50 Fed. 481. In the application of this general rule some confusion has arisen as to the extent to which a court of equity may go in the issuance of receivers certificates in displacement of prior liens. If the property is liable to be lost by foreclosure of a mortgage or is imperiled by failure to keep up insurance or to

maintain a watchman to guard it, there can be no question as to the propriety and necessity of providing funds for these purposes by means of receivers certificates if necessary, for obviously such action would be for the benefit of the lienor. It is when continued operation of the business is under consideration that the difficult questions arise. If the business of the insolvent corporation is that of operating oil or mining property, the continued operation might be necessary in order to preserve the property. Here again, the displacement of a prior lien would be for the benefit of the lienor. Each case must be considered with reference to the particular facts and circumstances that surround it but it is clear from the authorities that the issuance of receivers certificates in displacement of prior liens in the case of a private corporation is an exception to the rule and is only justified on the ground of preservation of the property. *Jerome* v. *McCarter*, 94 U. S. 734; *Lockport Felt Co.* v. *United Box Board & Paper Co.*, 74 N. J. Eq. 686, 70 Atl. 980; *International Trust Co.* v. *United Coal Co.*, 27 Colo. 246.

Even in a case where it may be proper to displace a prior lien in order to obtain funds to preserve the property, this should seldom be done without notice to all interested parties and after full consideration of all the facts showing necessity for such action. In *Lockport Felt Co.* v. *United Box Board & Paper Co., supra,* the court said: "Under no circumstances would the court be justified in authorizing its receiver to borrow money and make the obligation thereof a first lien on the property of a private corporation by the displacement of existing liens for the mere purpose of continuing the business in which the company was engaged, unless possibly in a case in which it satisfactorily appeared that the continuation of the business was absolutely essential to the preservation of the property in the receiver's custody. In the case of a private corporation this necessity is made the criterion.

"In addition to the limitations thus set to the power of the court, it may be well to add that in every case the power

now appealed to is an extraordinary one, and is liable to abuse unless exercised with the utmost caution. The court should be satisfied by a preponderance of circumstances that no other course could be successfully adopted, and that practical ruin would ensue if the authority were withheld. All the facts should be exhibited which make the necessity apparent, all the parties affected should be notified, and a full hearing accorded to all objectors."

As the original decree authorizing the receivers certificates was entered *ex parte* and without notice, we have no record before us as to what representations were made to the court prior to its entry.

The first decree contains the following recital: . . . "it appearing to the satisfaction of the court that it is necessary for the preservation of the estate and effects of said corporation that a temporary receiver or receivers be appointed to take charge of and hold said estate and effects and that he or they continue the business of said corporation and that he or they be authorized and enabled to borrow money for the purpose of continuing said business and that it is necessary in order to enable him or them to borrow such money that the lender or lenders of such money be.given a first lien as security therefor upon all the property and effects of said corporation other than choses in action."

The interlocutory decree of March 4 recites that it is necessary for the preservation of the property and necessary in the interests of the bondholders and all other creditors as well as its stockholders in order to prevent the deterioration and depreciation of the property and in order to make it possible to sell the same as a going concern that its business be continued in the regular course. This decree further recites . . . "and it being further shown to the court by the evidence that owners and holders or pledgors of a large part of the bonds of said corporation secured by a trust mortgage on most of its property are willing that some such decree as this shall be entered." This decree reaffirms the decree of February 21 as to the issuance of receivers certifi-

cates in making the same a first lien on the property of the corporation.

From the recital in these decrees and from an examination of the record of the hearing prior to the entry of the decree of March 4, it is evident that the primary purpose of the receivers was to reorganize and rehabilitate the business of the corporation with a view of disposing of its property as a going concern and that the preservation of the property as such was only incidental thereto. At the hearing on March 4, evidence was introduced to the effect that there was a large equity in the property, that the corporation had a good will of some value and that there was available a complement of skilled help to operate the plant; that if the plant were shut down a rapid depreciation would follow and the help would scatter and that the textile business was at a low ebb and textile plants brought little if sold at forced sale. All of these facts were perfectly proper for the interested parties to take into consideration in determining what course they should follow but it was beyond the power of the court to make a secured creditor of the respondent corporation an involuntary contributor to the capital necessary to continue the operation of the plant when the purpose was not so much the preservation of the property as a reorganization of the business. A bondholder in an insolvent corporation has the right to stand on the security of his lien and if he deems it in his interest to become a party to a plan of reorganization this must be by his own voluntary act. The bondholders were in effect mortgagees. It was for them and them only to say whether they would stand on their security or subject their capital to the risks of a further operation of the business. The Chase National Bank, when informed of the issuance of receivers certificates supplanting the lien of the bonds, became a party to the receivership proceedings and asked that the decrees be revoked so far as they affected the lien of the bonds held by it. Said bank did not consent expressly or impliedly to the displacement of its lien and the court below correctly so found.

It follows, therefore, that as to the bonds held by the Chase National Bank they should be paid proportionately by the trustee free of all claims of the receivers and their creditors.

And the same ruling applies to the holders of twenty-three bonds, who did not consent to the issuance of the receivers certificates.

The bonds owned or represented by Francis W. Greene and Edward A. Greene stood on a different footing. The court below found that the bonds owned or represented by Francis W. Greene should be subordinated to the claims of all of the receivers' creditors on the ground of estoppel and said Francis W. Greene did not appeal. Therefore, these bonds, thirty in number, stand subject to this finding.

Edward A. Greene owned or represented two hundred and two bonds. One of his grounds of appeal is that the court erred in finding that he had authority to act in behalf of the holders of bonds other than himself so as to render the holders of such other bonds liable for the payment of the receivers' debts and expenses. The trial justice found that he had such authority and this ground of appeal was not pressed at the hearing before us, so that it will be taken that all of the holders of these two hundred and two bonds stand on the same ground. The trial justice found that the acts of Edward A. Greene with respect to the receivership while not such as to constitute a pure estoppel or an estoppel *in pais*, nevertheless subjected the bonds owned or repre-sented by him to a priority in favor of all of the creditors of the receivers on the ground of *quasi* estoppel. The rescript does not set forth in detail the specific acts of said Greene which subjected him to the doctrine of *quasi* estoppel. The rescript states in substance that Greene was in reasonably close touch by interview and correspondence with the affairs of the receivership but that the testimony did not reveal that he had a complete detailed knowledge of the receivers' business; that he was in favor of the plan of the receivers to sell the plant as a going concern; that generally

he was working with the receivers in the hope that all could work out of a bad condition and that he agreed not to press for foreclosure until July 1, 1925.

From the rescript and from an examination of the record the facts appear to be briefly as follows. In January, 1924, counsel for Francis W. Greene, one of the receivers, who was at that time treasurer and general manager of the respondent corporation, interviewed officials of the complainant and informed them of the financial difficulties of respondent. He attempted to have the complainant act under a provision in the trust mortgage giving the trustee the right to operate the plant for a period of six months but the complainant refused to exercise this right. Counsel also saw Edward A. Greene and informed him of the situation. It was agreed by all that a receivership was inevitable and that the interests of all would be best served by continuing the business for a time. Edward A. Greene consented to the issuance of receivers certificates in a reasonable amount having priority over the lien of his bonds and over the lien of the bonds that he represented and he did not object when the amount was fixed at $20,000 by the court. Said Greene did not initiate the receivership proceedings and was not a party thereto. He did not object nor was he in a position so to do for the reason that at that time there was no default on the mortgage.

The receivers and a Mr. Clark, New York agent of the respondent, were optimistic as to the prospects of reorganization of the company. Previous to the receivership, Francis W. Greene had an appraisal of the plant made by a reliable engineering firm and the value was placed at about $1,250,000. It is true that Edward A. Greene was vitally interested in the outcome of the receivership; that he knew of the depressed condition of the textile industries at that time and he may have been apprehensive of the result of a sale by foreclosure but there is no evidence that he induced, persuaded or even requested the receivers to continue the operation of the plant. He was in sympathy with the aim

of the receivers; he was willing to forego the lien of his bonds up to $20,000. He would have given favorable consideration to an exchange of bonds in a reorganization.

The receivers did not regard Greene as committed to a complete waiver of the lien of his bonds for in August, 1924, through counsel, they appealed to him for further financial assistance which he refused to give. Most of the indebtedness which was the basis of the intervening creditors' claims was incurred after this date. In December, 1924, with the other bondholders, he allowed about $4,000 to be paid over to the receivers by the trustee to be used for the installation of a hand printing plant, to which reference has heretofore been made, and at that time, on representation of the receivers that they were hampered in obtaining orders by fear on the part of prospective customers that the mortgage might be foreclosed before the orders could be executed, he agreed not to request the trustee to foreclose before July 1, 1925. It is urged that by his failure to insist on an earlier foreclosure and by his actions with respect to the receivership he acquiesced in the continued operation of the plant and therefore is estopped to claim his priority over the general creditors. A mortgagee is under no obligation to foreclose immediately on default in the terms of the mortgage. He may consider it for his best interests to defer a sale until a more favorable time. *International Trust Co.* v. *United Coal Co., supra.* It is clear that the creditors were not misled by any action on the part of Greene. For all that appears in the record they did not even know when they gave credit to the receivers, of his interest in the property or his connection with the receivership proceedings. They dealt only with the receivers and are charged with notice that the property in receivership was encumbered and that the authority of the receivers to borrow money in priority to the bonds was limited to $20,000. *Erie Malleable Co.* v. *Standard Parts Co.*, 299 Fed. 82; *Ball* v. *Improved Property Holding Co.*, 247 Fed. 645; *Kennebec Box Co.* v. *O. S. Richards Corp.* 295 Fed. 418; *American Engineering Co.* v.

Metropolitan By-Products Co., 275 Fed. 34. In *Smith* v. *Shenandoah Valley National Bank*, 246 Fed. 379, where the bondholders consented to certificates of indebtedness being issued and to the receivers borrowing $5,000, the court said: "The limitation of $5,000.00 expressed in the waiver negatived any inference of consent to the contracting of debts beyond that amount."

And it is equally clear that the receivers were not misled as to the position of said Greene. They knew that he had placed a limit on the assistance he was willing to give and the record does not disclose any act or word on his part that would justify the receivers in continuing the operation of the plant with expectation that said Greene or those whom he represented would be responsible for the losses that might be incurred. Edward A. Greene may have thought that his interests would be best served by a continuation of the business but his hopes or his fears were not grounds for estoppel. Indeed, they were immaterial except as interpretative of his acts. He was within his rights in consulting his own interests so long as his conduct did not mislead or prejudice anyone dealing with the receivers. We are of the opinion that the conduct of said Greene did not constitute grounds for the application of the doctrine of *quasi* estoppel. There is lacking one essential element, namely, that the creditors did not change their position in reliance on anything that said Greene did. The doctrine of *quasi* estoppel is defined in 21 Corpus Juris, p. 1202, as follows: that a person "cannot afterward assume a position inconsistent with such act, claim, or conduct to the prejudice of another who has acted in reliance on such conduct or representation," and, at page 1205, it is essential "also that the party invoking the estoppel was misled by the acts or conduct of the party against whom the estoppel is claimed." At page 1207: "In order to create an estoppel by the acceptance of benefits, it is essential . . . also that the party claiming the estoppel was without knowledge or means of knowledge of the facts on which he bases his claim of estoppel, that

he was influenced by and relied on the conduct of the person sought to be estopped, and that he changed his position in reliance thereon to his injury."

As to the two hundred and two bonds owned or represented by Edward A. Greene, their holders should be paid their proportionate shares by the trustee free of all claims of general creditors of the receivers but there must be deducted by the trustee and paid over to the receivers from the share of said bonds so much of the sum of $20,000 as may be necessary to pay the claims of the preferred creditors.

The general rule as to the order of payment of claims out of funds in the hands of receivers gives priority to the claims of the receivers and counsel for services rendered. The honesty, good faith and good intentions of the receivers are not questioned but their operation of the plant was detrimental to the preferred creditors.

We are therefore of the opinion that the compensation of the receivers and their counsel should follow the payment of all taxes, including the repayment to the complainant of all taxes advanced by it and also the taxes paid by E. A. Stockwell, special master, and should be so adjusted as to leave a sufficient sum to pay in full the holders of the receivers certificates.

Some of the general creditors contend that their claims should be preferred on the ground that some of the materials furnished by them was used in the preservation of the property but we agree with the finding of the trial justice that, from the testimony, it is impossible to arrive at any fair basis for such preference.

The appeals are sustained, the decree appealed from is reversed, and the cause is remanded to the Superior Court for further proceedings in accordance with this opinion.

*William R. Tillinghast, James C. Collins, Tillinghast & Collins,* for complainant.

*Wilson, Churchill & Curtis, Alexander L. Churchill,* for Edward Aborn Greene.

318

*Gardner, Moss & Haslam,* for respondent and receivers.

*Comstock & Canning, John E. Canning, William A. Graham,* for National Exchange Bank of Providence.

*Huddy & Moulton, George H. Huddy, Jr.,* for Chase National Bank.

*Comstock & Canning,* for General Chemical Company, etc.

*Edwards & Angell,* for Frank W. Perry.

*Greenough, Lyman & Cross, George P. Slade,* for H. N. Hartwell & Sons, Inc.

*Frank L. Hanley,* for Francis Engraving Co.

*Henshaw, Lindemuth & Baker,* for E. DeF. Wilkinson & Co., etc.

*Philip C. Joslin,* for D. Bernstein & Son.

*Hinckley, Allen, Tillinghast & Phillips,* for John B. Lewis.

*Alfred S. & Arthur P. Johnson,* for John Hope &c. Co.

*Francis I. McCanna, Lee & McCanna,* for Castner, Curran & Bullitt, Inc.

*Benjamin M. McLyman,* for Clark-Rice Corporation.

*John A. Tillinghast,* for The Calco Chemical Company.

*John W. Baker,* for creditors generally.