I grant, solus arguendo, that the power to appoint receivers is inherent in courts of equity, and that the legislature can not divest the courts of that prerogative. However, equity courts at the common law, and at the time of the adoption of our state constitution, did not have, and at the present time in the absence of statutory authority therefor, they do not have, the power to authorize and direct chancery receivers to borrow money for any purposes other than that of preservation of the property of the insolvent or the continuance of the insolvent's business. In the case at bar, the borrowing is not for either purpose.
On January 30, 1932, an examination disclosed that the Cashmere State Bank, of Cashmere, Washington, was insolvent. On that date, pursuant to the banking act, Rem. Comp. Stat., §§ 3266-3277, outlining the procedure to be adopted by the banking department in the event of a state bank's insolvency, the state supervisor of banking closed the bank, and took possession of all the property and business of the bank for the purpose of liquidation.
The Congressional act of January 21, 1932, created the Reconstruction Finance Corporation, which was authorized to make loans, upon certain terms and conditions, to any bank in process of liquidation to aid in the reorganization or liquidation of such bank. *Page 271 
On March 22, 1932, the state supervisor of banking petitioned the superior court of Chelan county for an order authorizing and directing the supervisor to apply to the Reconstruction Finance Corporation for a loan of not more than one hundred thousand dollars, at such rate of interest as the Finance Corporation required, for the purpose of paying preferred creditors and distributing the balance thereof to the general creditors and depositors as a first dividend; and as security for the loan, if the application were accepted, to pledge to the Reconstruction Finance Corporation all the assets of the insolvent Cashmere State Bank. The court entered an order granting the prayer of the petitioner. The cause is before us upon the duly filed petition in this court of S.M. Sim and W.D. Stewart, depositor and stockholder, respectively, of the insolvent bank, for the review of that order.
Has the superior court the power to authorize the receiver (the state supervisor of banking) of a state bank to borrow money from the Reconstruction Finance Corporation, and to mortgage all of the assets of the bank to secure payment of the loan, for the purpose of enabling the receiver to pay preferred claims and a first dividend to the general creditors and depositors of the insolvent bank? That is the sole question presented by the case at bar. It must be borne in mind that the loan is not for the purpose of protecting the assets of the insolvent bank (borrowing to prevent destruction of the bank's property), nor is the loan sought for the purpose of obtaining funds as a necessary expense in liquidating the assets of the bank.
The state banking act clearly defines the duties and powers of the state officers. The statutory mandate is that, when a state bank becomes insolvent, the state bank examiner shall take possession, forthwith, without the aid of the court, of the property and business *Page 272 
of the bank. After the examiner takes possession thereof, the banking corporation has ten days within which to institute an action to review the examiner's right to possession. Rem. Comp. Stat., § 3275. If, at any time within ninety days after taking possession, the bank examiner determines that all impairments and delinquencies have been made good, he may permit the bank to reopen upon such terms and conditions as he shall prescribe. Rem. Comp. Stat., § 3280. The powers and duties of the examiner in possession of an insolvent state bank are prescribed as follows:
"Upon taking possession of any bank or trust company, the examiner shall proceed to collect the assets thereof and to preserve, administer and liquidate the business and assets of such corporation. With the approval of the superior court of the county in which such corporation is located, he may sell, compound or compromise bad or doubtful debts and upon such terms as the court shall direct sell all real estate and personal property of such corporation." Rem. Comp. Stat., § 3269.
"At any time after the expiration of the date fixed for the presentation of claims, the examiner, subject to the approval of the court, may declare one or more dividends out of the funds remaining in his hands after the payment of expenses." Rem. Comp. Stat., § 3273.
"When all proper claims of depositors and creditors (not including stockholders) have been paid, as well as all expenses of administration and liquidation and proper provision has been made for unclaimed or unpaid deposits and dividends, and assets still remain in his hands, the examiner shall call a meeting of the stockholders of such corporation, giving thirty days' notice thereof, by one publication in a newspaper published in the county where such corporation is located. At such meeting, each share shall entitle the holder thereof to a vote in person or by proxy. A vote by ballot shall be taken to determine whether the examiner shall wind up the affairs of such corporation or the stockholders appoint an agent to do so. The examiner, *Page 273 
if so required, shall wind up such corporation and distribute its assets to those entitled thereto. If the appointment of an agent is determined upon, the stockholders shall forthwith select such agent by ballot. Such agent shall file a bond to the state of Washington in such amount and so conditioned as the examiner shall require. Thereupon the examiner shall transfer to such agent the assets of such corporation then remaining in his hands, and be relieved from further responsibility in reference to such corporation. Such agent shall convert the assets of such corporation into cash and distribute the same to the parties thereunto entitled, subject to the supervision of the court. In case of his death, removal or refusal to act, the stockholders may select a successor with like powers." Rem. Comp. Stat., § 3277.
At common law, courts of equity had exclusive jurisdiction of causes seeking the appointment of receivers. By statute (Rem. Comp. Stat., § 741) the superior court had, prior to the enactment of the banking statute, sole authority to appoint a receiver for, and to wind up the affairs of, a corporation which was in danger of insolvency.
A state bank receivership is purely statutory. By the banking act, the legislature divested the courts of their chancery prerogatives of appointing receivers of state banks and in directing and controlling them as officers of the court. The responsibility as to the wisdom or unwisdom of that course is not involved. The question is not what the legislature should have provided, but what is the law declared by the legislature. The words used are plain; they are susceptible to no other meaning than that the legislature intended to, and did, confer on an executive state officer powers theretofore exercised by the courts. Under any rule of construction of a statute, whether strict or liberal, the legislative intent, when clearly apparent as in the banking statute, must prevail. *Page 274 
Of course, injunctions and other remedies of judicial cognizance may, as in all other cases, be invoked to keep the receiver within his jurisdiction, prevent an arbitrary exercise of power and other wrongful acts. However, the court may not control the receiver in the lawful and proper discharge of his duties in administering the assets of a bank entrusted to him by the legislature and not by the court, except as provided by the statute wherein the approval of the court is required. If the receiver, without aid of the court, was about to borrow money for the purpose of paying dividends and the statute did not authorize him to do so, on proper petition therefor the court would restrain such threatened action. If the receiver has no such power, the court may not lawfully confer it in the absence of statutory authority therefor or unless the court may do so under its general equity powers.
The power of the superior court is limited to the appointment of a temporary receiver in case of imminent necessity. Upon the appointment by the court of a temporary receiver, the clerk of the court is required by the statute to immediately notify the state bank examiner by telegraph and mail of such appointment. The temporary receiver, upon demand of the examiner, surrenders "up to him such possession and all assets which shall have come into the hands of such receiver."
"No receiver shall be appointed by the court for any bank or trust company nor shall any assignment of any bank or trust company for the benefit of creditors be valid, excepting only that a court otherwise having jurisdiction may in case of imminent necessity appoint a temporary receiver to take possession of and preserve the assets of such corporation. Immediately upon any such appointment, the clerk of such court shall notify the state bank examiner by telegraph and mail of such appointment and the examiner shall *Page 275 
forthwith take possession of such bank or trust company, as in case of insolvency, and such temporary receiver shall upon demand of the examiner surrender up to him such possession and all assets which shall have come into the hands of such receiver. The examiner shall in due course pay such receiver out of the assets of such corporation such amount as the court shall allow." Rem. Comp. Stat., § 3276.
The receiver of an insolvent state bank is not appointed by the court — as we have seen, the statute expressly deprives the court of the power to appoint a state bank receiver — hence the receiver is not subject to the control and direction of the court, as in the case of chancery receivers. In those states in which the court under the banking statute appoints the receivers of insolvent banks, it may be correctly held that that is a chancery receivership and the receiver has the powers of receivers generally, subject to the control and direction of the court.
The state banking officer takes possession of the property and business of a bank under the statute, and not as an officer of the court. By virtue of the statute, the state banking officer takes possession and holds it without the aid of, and despite, judicial action. Such receiver is an executive creature of the statute, and can exercise only such powers with which the statute vests him. That is to say, he is an executive officer of the state, and derives his powers from the statute, and no order of the court applied for can be broader than the statute.
Section 3269, supra, authorizes the examiner, upon taking possession of the insolvent bank, to collect the assets thereof and "preserve, administer and liquidate the business and assets" of such bank. There is nothing in that section, or in any other section of the banking act, that expressly or impliedly confers authority *Page 276 
on the receiver or empowers the court to authorize the receiver to borrow money and pledge the assets of the bank to secure payment of the loan which is to be used for the purpose of paying preferred claims and a first dividend to the general creditors and depositors. The receiver not having such power, the court may not lawfully confer it in the absence of statutory authority. Nor may the court, under its general equity powers, authorize the receiver of a state bank to borrow money for the purposes stated.
While the statute provides that, with the approval of the superior court of the county in which such bank is located, the receiver may sell all real estate and personal property of the insolvent bank, and with the approval of the court "he may sell, compound or compromise bad or doubtful debts," the court is not thereby expressly or impliedly empowered to authorize the receiver to borrow money for the purposes recited in the receiver's petition. The mortgaging or pledging of the insolvent bank's assets to secure payment of a loan by the Reconstruction Finance Corporation to the bank is not a sale of the property, nor is it a sale or compromise of bad or doubtful debts.
I repeat, the legislature divested the courts of their equity jurisdiction in the matter of appointing receivers of state banks and in directing and controlling them as officers of the court. The assets are not in the hands of a judicial executive officer appointed by the court. The assets are in the hands of a non-judicial executive public officer. Under the statute, I reiterate, the court may not, as it may a chancery receiver appointed by the court, direct or control that non-judicial officer in the proper discharge of his public duties, except as the statute prescribes.
I have no quarrel with the argument that the court may, in a proper case and where there is a necessity *Page 277 
therefor, authorize a chancery receiver to execute a mortgage on property of the estate for the purpose of securing moneys borrowed to preserve or administer it. In some instances, chancery receivers may be directed and authorized by the court appointing them to borrow money to preserve property and assets in the hands of the receiver or protect or care for it.
The right of a chancery receiver to borrow money is very limited. The power of a court of chancery to authorize the issuance of receivers' certificates grows out of its duty to protect and preserve the property of the corporation in its hands. 25 R.C.L. 95. The theory of receivership certificates came into being because of necessity of continuing operation of railroads and other public service corporations. The allowance of the issuance of receivers' certificates is confined to cases involving railroads and other corporations in the continued operation of which the public have an interest.
"Where the court takes charge of railroads or other corporations affected with a public use, and undertakes to operate them through a receiver, the necessary debts of such operation may, as against all parties to the suit, be made a prior lien upon the income, and if that be insufficient, upon the property itself. But, as has been frequently stated, this is an extraordinary power; and it is exercised only because of the public duty resting upon such corporations and the public interest accordingly involved in the continuance of their operation." Craver v. Greer, 107 Tex. 356, 179 S.W. 862.
Of course, it is not contended that the bank will be or could be kept open for the doing of business and thereby be performing a service to the public. A bank is not a public service corporation.
In the case of a private corporation, the court may authorize a receiver to borrow money upon the faith and credit of all the property of the insolvent corporation, *Page 278 
but only for the one purpose of preservation of the property.Lockport Felt Co. v. United Box Board Paper Co., 74 N.J. Eq. 686,70 A. 980. Such borrowing, the courts uniformly hold, is justified on the ground of preservation of the property. We should be mindful of the fact that "preservation" as applied to borrowing in the case of a private receivership, means prevention of destruction of the property. 53 C.J. 187; Rhode IslandHospital Trust Co. v. S.H. Greene Sons Corp., 50 R.I. 305,146 A. 765.
In the case at bar, the borrowed money would not be used to "preserve" and "liquidate" the business and assets of the bank. To pay dividends with borrowed money is not "preservation" of the property of the bank, neither is it a liquidation of the business and assets of the bank. It is not a dissipation or destruction of the property of the bank to hold frozen assets until they become more liquid. The borrowed money would be used to pay dividends.
The borrowing of one hundred thousand dollars for such purpose with interest, pledging assets of one hundred and fifty thousand dollars to secure its payment, would add one hundred thousand dollars with accrued interest, costs and expenses to an already existing indebtedness of the insolvent bank which is unable to pay the preferred claims and a first dividend to general creditors and depositors unless it obtains the loan. From what source will funds be derived to pay either principal or interest of the loan as it matures, except on foreclosure with further costs and expenses? It may be that it is anticipated that all that will ever be realized will be the borrowed money of the Reconstruction Finance Corporation; that, with such a loan, the depositors and creditors will receive more than could be realized from liquidating the assets without borrowed money, and that the Reconstruction *Page 279 
Finance Corporation may bear whatever deficit may result.
There is no showing that the property will be lost or destroyed. Payment of dividends may be deferred until the frozen assets become more liquid. They will not be made liquid by the borrowing thereon and paying interest on the loan until the hoped for time when the pledged assets are sufficiently thawed to pay the loan, with interest thereon, etc. The borrowing of the money on the faith and credit of the assets to pay dividends, would notipso facto discharge the receiver. The receivership would continue until the final winding up of the affairs of the insolvent bank.
Such receiver could, as well as the Reconstruction Finance Corporation, hold the assets until liquidity, if that ever happens. The receiver is not, under the statute, required to sacrifice the assets immediately. We are not aware of any statute forbidding the retention by the receiver of the assets for a period of time as long as that for which he could pledge them to the Reconstruction Finance Corporation. Though the retention by the receiver might delay the payment of dividends, the expense of the receivership would be lessened. At least, there would not be the interest to pay on the loan of one hundred thousand dollars.
It is argued: The duties of the receiver are of a public nature; that, in the discharge of those duties, he acts in the public interest; and that capacity coextensive with the nature of the office and the object to be accomplished must be inferred. I understand the majority to say, in effect, that the court granted no power to the receiver, but authorized him under the statute to exercise the implied statutory authority conferred upon him. But the authority to the superior court to approve the doing of certain things by the statutory receiver specifically enumerated in the statute, *Page 280 
can not be extended to include other things, or as conferring power upon the court to, in turn, confer or attempt to confer on the statutory receiver any further or different power or authority.
In the case of a chancery receiver, the court cannot lawfully authorize such receiver to borrow money and pledge the assets of an insolvent bank for the purpose of paying dividends to creditors and depositors of such insolvent. The banking act does not authorize the receiver of a state bank, either with or without the approval of the court, to borrow money on the faith and credit of the assets of the insolvent bank for the purpose of paying dividends.
Mindful of the absence of authority of a receiver of a national bank to pledge the assets of such bank for a loan, the Congress expressly authorized national bank receivers — the legislature has not authorized state bank receivers — to borrow from the Reconstruction Finance Corporation, and to pledge the assets of the insolvent bank as security for the loan.
". . . and any receiver of any national bank is hereby authorized to contract for such loans and to pledge any assets of the bank for securing the same . . ." Sec. 605, U.S. Code, Title 15.
The Congress of the United States may not by enactment enlarge the powers of a receiver of a state bank. That is a province in which only the state legislature may function.
While we, if acting as legislators, might support such legislation as that desired by the respondent, we as a court should not read into the act something which is absent therefrom. We should be governed by the law as written. Though it be desirable for the Federal government to, in effect, take over insolvent state banks for liquidation, I find no sanction by the sovereign state of Washington therefor. *Page 281 
I find no authority for the borrowing of money by the receiver of a state bank, and the payment of interest thereon, from the Reconstruction Finance Corporation for the purpose of paying dividends to certain creditors of the insolvent bank. A going concern, though in financial distress, might be aided by borrowing money to continue in business. I can not see how an insolvent bank, which has ceased to function and whose property and assets (which are wholly insufficient to pay its liabilities) have been taken over by a receiver for liquidation, can be aided or its creditors benefited by borrowing money (for payment of dividends) and pledging its assets to secure its payment and thereby increasing the indebtedness; it not being shown that such loan was necessary to prevent the destruction of the property of the insolvent bank. We judicially know that a loan now will not afford the creditors and depositors "the facilities for obtaining credit for seed, the planting of crops, and spraying and pruning of orchards." The crops have been planted, and the time for the spraying and pruning is past.
The order appealed from should be reversed, and the cause remanded with direction to the superior court to dismiss the petition.
MAIN, PARKER, and MITCHELL, JJ., concur with MILLARD, J. *Page 282